IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PERATON, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:23-cv-1649 MSN/IDD |
| | ) |
| PERATONS.COM, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff Peraton Inc.'s, ("Plaintiff" or "Peraton") Motion for Default Judgment ("Motion") against Defendant peratons.com. ("Domain Name" or "Defendant"). Dkt. No. 14. In its Complaint, Plaintiff also brought a claim against John Doe, which Plaintiff requested be dismissed without prejudice in its Motion. *Id.* After the Defendant failed to file an answer, plead, or otherwise defend this action, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiff's Motion for Default Judgment, the supporting memorandum, and relevant portions of the underlying record, the undersigned Magistrate Judge makes the following findings and recommends that Plaintiff's Motion be **GRANTED.**

**I. INTRODUCTION**

On December 5, 2023, Plaintiff filed its complaint for *in rem* relief against peratons.com and the current registrant of the Domain Name, John Doe. Dkt. No. 1. Plaintiff brings a claim for violation of the Federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §

1

1125(d) against the Domain Name. *Id.*[1] As relief, Plaintiff seeks an order directing the registrar of the Domain Name, NameCheap Inc., to take the necessary steps to change the registrant of the Domain Name to Peraton or Peraton's designee. Mem. in Supp. of Mot. for Default J. at 12. In the event that NameCheap Inc. fails to promptly comply with an Order directing change of registrant, Plaintiff seeks an Order directing VeriSign, Inc., to transfer the registrar of record of the Domain Name to a registrar of Peraton's choosing, who will take the necessary steps to change the registrant of the Domain Name to Peraton. *Id.*

### A. Jurisdiction and Venue

For a court to render a default judgment against a party, it must have (1) subject matter jurisdiction, (2) personal or *in rem* jurisdiction, and (3) be the appropriate venue for the action.

This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, because this case involves a federal question arising under the ACPA (15 U.S.C. § 1121(a)).

This court has *in rem* jurisdiction over the Domain Name, pursuant to 15 U.S.C. § 1125(d)(2)(A), which permits the owner of a mark to file an *in rem* action against a domain name in the judicial district in which the domain name registrar is located, if two elements are met. The top-level domain name registry for the .com gTLD, including the Defendant Domain Name, is Verisign, Inc., which is located within this judicial district. Compl. ¶ 12; Mem. in Supp. of Mot. for Default J. at 7. The first element required for an *in rem* action over a domain name is that the domain name(s) must violate a plaintiff's trademark rights. *See* 15 U.S.C. § 1125(d)(2)(A)(i). Plaintiff's Complaint alleges that Plaintiff is the rightful owner of the Peraton Mark, and that

---

[1] In its Complaint, Plaintiff also brought a claim for *In Rem* Trademark Infringement against John Doe. In the present Motion, Plaintiff asks that the Trademark Infringement claim against John Doe be dismissed without prejudice.

Defendant Domain Name infringes on its mark. Compl. ¶¶ 13-28. Therefore the first element is satisfied.

As to the second element required for *in rem* jurisdiction over the Defendant Domain Name, the court must find that the trademark owner: (1) is unable to obtain *in personam* jurisdiction over a person liable for the infringement, or (2) through due diligence is unable to find a person liable for the infringement. *See* 15 U.S.C. § 1125(d)(2)(A)(ii). Due diligence requires that the plaintiff: (aa) send a notice of the alleged violation and intent to sue to the registrant of the domain name at the postal and e-mail address provided by the registrant and (bb) publish a notice of the action as the court may direct. *Id*.

Here, the undersigned finds that Plaintiff has sufficiently alleged that it is unable to obtain personal jurisdiction over the registrant of the Defendant Domain Name because the registrant, John Doe, has actively sought to conceal his/her identity. Dkt. Nos. 1-1, 12. According to the WhoIs records for the Domain Name, which Plaintiff obtained, John Doe uses a service that replaces a registrant's identifying information with "Redacted for Privacy," which thereby conceals the identity of John Doe. Dkt. Nos. 1-1, 12. Therefore, the undersigned finds that Plaintiff has sufficiently demonstrated that it is unable to obtain *in personam* jurisdiction over Defendant Domain Name.

Further, Plaintiff has complied with 15 U.S.C. § 1125(d)(2)(A)(ii), subsections (aa) and (bb). In that regard, on December 14 and 18, 2023, Plaintiff sent the Complaint and notice of its intent to proceed *in rem* against the Defendant to the contact information that John Doe published in the WhoIs registration records for the Domain Name. Dkt. Nos. 12-1, 16; Mem. in Supp. of Mot. for Default J. at 5. Plaintiff filed a Motion for Order to Publish Notice of Action on December 16, 2023. Dkt. No. 11. The Court granted the motion on December 18, 2023, and ordered Plaintiff

to publish a copy of the Order in *The Washington Post*, once, within fourteen (14) days of the Order. Dkt. No. 14. On December 22, 2023, Plaintiff published a copy of the Order in *The Washington Post*. Dkt. Nos. 17, 17-1. Accordingly, the undersigned finds that Plaintiff satisfied its due diligence requirements pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii).

Venue also is proper in this district under 15 U.S.C. § 1125(d)(2)(C). For an *in rem* action, the domain name "shall be deemed to have its situs" in the judicial district where the "registrar, registry, or other domain name authority" is located. 15 U.S.C. § 1125(d)(2)(C). Here, the principal place of business of the top-level domain name registry, Verisign, Inc., is located in this district. Compl. ¶ 12.

### B. Service of Process

The Court must be satisfied that the defaulting party has been properly served. Federal Rule of Civil Procedure ("FRCP") 4(n)(1) provides that "the court may assert service over property if authorized by a federal statute" and "notice to claimants of the property is given as provided in the statute or by serving a summons under this rule." In this case, 15 U.S.C. § 1125(d)(2)(B) states that satisfying the due diligence requirements outlined in § 1125(d)(2)(A)(ii) shall constitute service of process. Because the Plaintiff has fulfilled the due diligence requirements outlined above, the undersigned recommends finding that service of process has been proper as to the Defendant Domain Name.

### C. Grounds for Default Judgment

On December 5, 2023, Plaintiff filed its Complaint against the Defendant Domain Name and its registrant, John Doe. Dkt. No. 1. On December 16, 2023, Plaintiff filed its Motion for Order to Publish Notice of Action. Dkt. No. 11. The Court granted the motion, and on December 22, 2023, Plaintiff published a copy of the Order in *The Washington Post*. Dkt. Nos. 14, 17, 17-1.

4

Plaintiff filed a Request for Clerk's Entry of Default on January 13, 2024, and the Clerk of the Court entered default on January 16, 2024. Dkt. Nos. 22-23. On January 24, 2024, Plaintiff filed its Motion for Default Judgment and accompanying memorandum in support of its motion. Dkt. Nos. 24-25. On February 9, 2024, a hearing on the Motion for Default Judgment was held before the undersigned. Dkt. No. 27. After Defendant failed to respond to the Complaint or the Motion for Default Judgement, and failed to appear at the hearing, or otherwise defend this matter, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. *Id.*

## II. EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." A defendant in default concedes the factual allegations of the complaint. *See, e.g., DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id*.

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the FRCP to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### III. FACTUAL FINDINGS AND ANALYSIS

#### Count One: Violation of the ACPA

To establish an ACPA violation, a plaintiff is required to show that (1) the plaintiff owns the protected mark, (2) the registrant(s) had a bad faith intent to profit from using the domain name, and (3) the domain name is identical or confusingly similar to, or dilutive of, the distinctive marks owned by plaintiff. *See* 15 U.S.C. § 1125(d)(1)(A); s*ee also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). For the reasons set forth below, the undersigned finds that Plaintiff has established a violation of the ACPA.

#### *1. Plaintiff Possesses a Valid and Protectable Mark.*

A necessary predicate to an ACPA action is that a plaintiff has a protectable interest in a trademark. *See* 15 U.S.C. § 1125(d)(1)(A). A plaintiff's registration with the United Sates Patent and Trademark Office ("USPTO") is *prima facie* evidence of ownership of the mark and of the exclusive right to use the registered mark in commerce. *See* 15 U.S.C. § 1057(b).

The undersigned finds that Plaintiff has a protectable interest in the PERATON mark. Peraton is the registrant of the peraton.com domain name and has used the PERATON mark in its offering of contracting services for over 6 years. Compl. ¶¶ 5, 13-15; Mem. in Supp. of Mot. for Default J. at 8. Peraton registered the PERATON mark with the U.S. Patent and Trademark Office

6

on October 2, 2018. Compl. ¶ 14; PERATON, Registration No. 5,576950. Peraton's protectable interest in the PERATON mark predates the registration of the Domain Name, which was registered on November 7, 2023. Compl. ¶ 17. Accordingly, the undersigned finds that Plaintiff has a protectable interest in the PERATON mark because of its ownership and use of the trademark.

### *2. Defendants Acted in Bad Faith with Intent to Profit from Using the Defendant Domain Name*

To establish an ACPA violation, Plaintiff also is required to prove that the registrant(s) had a bad faith intent to profit from using the Defendant Domain Name. 15 U.S.C. § 1125(d)(1)(A); *see People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). In determining whether a defendant acted in bad faith, a court may consider several factors, including, but not limited to:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

>(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
>(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
>(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i); *see People for Ethical Treatment of Animals*, 263 F.3d at 368–69. Courts need not address all nine factors and only need to discuss the factors relevant to the "unique circumstances of th[e] case." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F.Supp.2d 563, 567 (E.D.Va.2010); *see Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 268 (4th Cir.2001).

The undersigned finds that Plaintiff has established that registrant possessed the requisite bad faith intent to profit from Defendant Domain Name. Under the facts and circumstances of this case, the undersigned finds factors V and VII—intent to divert consumers for commercial gain and failure to maintain accurate contact information, respectively—particularly relevant in determining whether Defendants acted in bad faith.

There is no indication that John Doe has any intellectual property rights in the Domain Name, nor that the Domain Name includes John Doe's legal name, pursuant to factors I and II. Compl. ¶ 27. Further, pursuant to factors III and IV, John Doe has not used the Domain Name in connection with the bona fide offering of goods or services, nor in bona fide noncommercial or

fair use of the Mark through the associated websites. *See Id.* ¶¶ 19-28. Rather, pursuant to factor V, Plaintiff demonstrates that Defendant had the intent to divert customers from Plaintiff's websites for commercial gain and such that it would cause harm to the goodwill represented by the Peraton mark. *Id.* In that regard, on November 8, 2023, the day after John Doe registered the Domain Name, John Doe obtained an email exchange regarding payment between Peraton and one of its contracting partners. *Id.* ¶ 20. John Doe used the Domain Name to create an email address and pretended to be a Peraton employee. *Id.* ¶ 21. John Doe asked the contracting partner to provide the status of an unpaid invoice and advised that "our payment instructions have recently changed and we are requesting that all further payments to [sic] be processed using our updated details." *Id.* ¶ 22; Dkt. No. 1-2. John Doe then provided the contracting partner with bank account information, which he claimed to be for payment to Peraton, but which, in fact, was not associated with Peraton. Compl. ¶ 24. Ultimately, the contracting partner transmitted payment to the bank account John Doe provided, believing the payment was going to Peraton. *Id.* Accordingly, Plaintiff has sufficiently demonstrated that John Doe used the Domain Name with the intent of diverting consumers for financial gain.

Factor VII further supports a finding of bad faith. According to the WhoIs records for the Domain Name, Defendant used a service to affirmatively conceal the registrant's identifying information. Dkt. Nos. 1-1, 12. Accordingly, Defendants have intentionally failed to maintain accurate contact information for the Domain Name. *See* 15 U.S.C. § 1125(d)(1)(B)(VII). Based on the foregoing factors, the undersigned finds that Plaintiff has sufficiently demonstrated Defendant's bad faith in using the Defendant Domain Name.

### *3. The Domain Name is Confusingly Similar or Identical to the Distinctive Mark*

The undersigned finds that Plaintiff has sufficiently demonstrated that the Defendant Domain Name is confusingly similar to Plaintiff's Mark. 15 U.S.C. § 1125(d)(a)(A)(ii); *See Also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). "In assessing whether a mark is confusingly similar, the alleged infringing domain name does not need to be identical to the registered mark. Rather, the 'dominant or salient portions' of the domain name must be sufficiently similar." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 936 (4th Cir. 1995)).

Here, the Peraton mark was completely duplicated in the Domain Name, solely with the addition of an "s" to the end of Peraton. Compl. ¶ 18. The dominant portion of the Domain Name is still "Peraton." *Id.* Further, John Doe used the Domain Name to purport to be a legitimate Peraton employee, which caused actual confusion by one of Peraton's contracting partners. Compl. ¶¶ 20-25. Therefore, Plaintiff has satisfied this element because the Domain Name is "virtually identical" to the PERATON mark. *See Agri-Supply Company, Inc. v. Agrisupply.Com*, 457 F. Supp. 2d 660, 663 (E.D. Va. Sept. 13, 2006) (holding the domain name was confusingly similar because it was "virtually identical" to plaintiff's trademark).

### **Relief**

In this *in rem* action, Plaintiff seeks an order directing NameCheap Inc. to change the registrant of the Domain Name to Peraton or Peraton's designee. Mot. for Default J. In the event that NameCheap Inc. fails to promptly comply with such an order, Plaintiff requests an order directing the .com registry operator, VeriSign, Inc., to transfer the registrar of record of the Domain Name to a registrar of Peraton's choosing, and that such registrar then change the registrant to

Peraton. *Id.* Pursuant to 15 U.S.C. § 1125(d)(1)(C), "[i]n any civil action involving the registration, trafficking, or use of a domain name . . . a court may order . . . the transfer of the domain name to the owner of the mark." This Court has previously ordered the transfer of domain names where those domain names infringe on valid trademarks. *See Int'l Bancorp, LLC.*, 129 F. Supp. 2d at 490. Given that Plaintiff has established a violation of the ACPA, the undersigned recommends granting Plaintiff's requested relief and ordering NameCheap Inc. to change the registrant of the Domain Name to Peraton or Peraton's designee. In the event that NameCheap does not comply with such an order within 60 days of its issuance, the undersigned recommends VeriSign, Inc. be directed to transfer the registrar of record of the Domain Name to a registrar of Peraton's choosing, who shall then take the necessary steps to change the registrant of the Domain Name to Peraton.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge recommends entry of default judgment in favor of Plaintiff and against Defendant Domain Name, as to Count I of the Complaint. The undersigned further recommends that NameCheap Inc. be ordered to change the registrant of the Domain Name to Peraton or Peraton's designee, and if NameCheap Inc. fails to do so within 60 days, that VeriSign, Inc. be ordered to transfer the registrar of record of the Domain Name to a registrar of Peraton's choosing, who shall then take the necessary steps to change the registrant of the Domain Name to Peraton.

## V. NOTICE

**By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendants at their address for service of process, the parties are notified as follows**. **Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen**

**(14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

March 22, 2024
Alexandria

/s/ Ivan D. Davis
_____
Ivan D. Davis
United States Magistrate Judge